STATE of Missouri, Respondent,

v.

James Guy PERSINGER, Appellant.

No. KCD 27812.

Missouri Court of Appeals,
Kansas City District.

Feb. 9, 1976.

Douglas S. Roberts, Gallatin, for appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Appellant was charged by amended information with first degree burglary by breaking and entering the dwelling house of his mother, Marvel Persinger, which was owned by her, with the intent to assault her. After a jury waived trial, the court found defendant guilty and sentenced him to eight years imprisonment.

■ Defendant's first Point Relied On is that "[t]he verdict was against the weight of the evidence in that it was clearly proven that the premises in question were the Appellant's dwelling house, for the burglary of which he cannot be convicted." His second is that "[t]he verdict was against the weight of the evidence in that it was clearly proven that Appellant did not enter the premises with the intent to assault his mother with the intent to do great bodily harm." Not only do both of appellant's points fail to indicate in what way defendant believes the trial court erred, but also they call on this court to pass upon the weight to be given the evidence. Even if it were to be overlooked that each point fails to indicate in what way the trial court erred, it is not within the scope of appellate review to pass on the weight to be given evidence. *State v. Earnest,* 162 S.W.2d 338 (Mo.App.1942). Therefore, neither of defendant's first two Points Relied On preserves anything for review. *State v. Amerson,* 518 S.W.2d 29 (Mo.1975). The court, however, interprets these points as an attempt to challenge the sufficiency of the evidence, and we will proceed to examine the record in order to determine if it con-

tains sufficient evidence to support the conclusion that the Persinger home was not defendant's "dwelling house" and that defendant entered the home with the intent to "assault his mother with the intent to do great bodily harm."

■ Viewing the evidence in the light most favorable to the State, the record reveals that defendant was something of an itinerant who lived most of the time in an old tool shed. When he was not intoxicated, however, his mother allowed him to sleep on the living room divan in her home which she owned. At best he stayed at his mother's less than half the time. On Thursday, September 26, 1974, he left his mother's house, intent not to return. Shortly thereafter he discovered that in order to facilitate this intent, he needed to retrieve some clothing he kept at the house and so on Saturday, September 28, 1974, he went to the house with a friend and asked to be admitted. Because he was intoxicated, his mother refused to permit him entry. This refusal angered defendant, and he threatened to kill the occupants of the house if not admitted. As his anger rose to a fever pitch, he pushed his fist through an outside door and demanded entry. His mother again refused. Seeing he could not gain entry through the porch door, he searched about for "something to kill the son-of-a-bitches with," and found a flower pot. Using it as a tool, he smashed the window in the living room door. After being warned that he would be shot if he entered, he reached through the broken window, unbolted the door from the inside, and walked into the house. Once inside, he went directly to his mother's bedroom where she was standing with a loaded .12 gauge shotgun. As he approached, she warned him not to come any closer. He continued his advance and she fired a shot. It missed. He continued toward her. She triggered off a second round, hitting him. Once hit, he fell to the floor. He "got up" immediately, however, and resumed his approach toward her. She fled the room and ran to the kitchen. Aft-

er the shooting he again threatened, saying, "I'll come back and get you."

It is apparent from this view of the record that there was sufficient evidence introduced at trial to support the conclusion that if defendant had any dwelling at all it was the deserted shed, and that at best he was merely a casual houseguest from time to time in his mother's home. Thus, the evidence was sufficient to allow the trial court to properly conclude that defendant did not even dwell in his mother's house; and under the most liberal conceivable interpretation, he could not be considered to be the "owner" of those premises for the purpose of the burglary statute, as contended by defendant. Moreover, the State's evidence is clearly sufficient to support a finding that defendant intended to assault his mother and to do her great bodily harm when he forcibly entered the house.

Defendant's third Point Relied On is that "[t]he trial court erred in admitting evidence of Appellant's statement after he had been shot." This Point Relied On is extremely similar to a point recently held totally inadequate by the St. Louis District of the Court of Appeals in *State v. Holland,* 525 S.W.2d 576 (Mo.App.1975). In that case, the defendant urged on appeal that "[t]he trial court erred in permitting the State to impeach its own witness." Noting that under certain circumstances a party, including the State in a criminal case, may impeach its own witness, the court held that the Point Relied On failed to demonstrate wherein and why the court's action was erroneous, and therefore failed to preserve anything for review. Similarly, in the case at bar, it is obvious that in some circumstances a trial court may admit the evidence of a defendant's statements made immediately after his being shot. It is apparent then that because defendant's third Point Relied On fails to state wherein and why admitting evidence of his statement was erroneous, the point fails to preserve anything for appellate review.

■ Even if the third point had been properly preserved, the statement made

after the assault was clearly admissible as part of the res gestae. See *Campbell v. Crutcher,* 224 S.W. 115 (Mo.App.1920), where in a suit for damages based upon an assault, the Springfield Court of Appeals held that threats and vile language attributed to a defendant immediately after the assault was a spontaneous outburst influenced by the affray in which he had the minute before been engaged, and was therefore clearly part of the res gestae. See also *State v. Rodgers,* 102 S.W.2d 566 (Mo.1937), a second degree murder case where the court held admissible as part of the res gestae a threat made by the defendant to the victim's brother one or two minutes after the fatal skirmish. Similarly, the statement made in the case at bar is clearly part of the res gestae of the entire incident.

None of defendant's three points preserves anything for appellate review; but even upon full consideration, they are without merit. Accordingly, the judgment is affirmed.

All concur.